[No. D053371. Fourth Dist., Div. One. Sept. 23, 2009.]

ELDON HYLTON, Plaintiff and Respondent, v.
FRANK E. ROGOZIENSKI, INC., et al., Defendants and Appellants.

COUNSEL

Frank E. Rogozienski; Seltzer|Caplan|McMahon|Vitek and Gerald L. McMahon for Defendants and Appellants.

Stephen M. Hogan; Herron & Steele and Matthew V. Herron for Plaintiff and Respondent.

OPINION

McDONALD, J.—Plaintiff Eldon Hylton filed a complaint against his former attorney, defendant Frank E. Rogozienski, seeking damages and rescission of a contingency fee contract based on Rogozienski's alleged misfeasance in connection with his professional representation of Hylton. Rogozienski moved to strike the complaint pursuant to Code of Civil Procedure[1] section 425.16, commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) The trial court denied Rogozienski's motion and this appeal followed.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Facts*[2]

*Hylton's Relationship with DivX*

Hylton founded a software company, DivXNetworks, Inc. (DivX). In August 2000, Hylton and DivX entered into a founder stock purchase

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Although Rogozienski recites numerous facts purporting to show the allegations of the complaint are false, we accept as true for purposes of our analysis the facts averred by Hylton (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 [64 Cal.Rptr.3d 867] (*Freeman*)), and only consider Rogozienski's evidence to the extent it defeats as a matter of law the evidence submitted by Hylton. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269 [46 Cal.Rptr.3d 638, 139 P.3d 30].)

agreement (FSPA) that entitled Hylton to purchase three million shares of DivX common stock for $3,000. Hylton paid the required consideration, and DivX issued a certificate evidencing his ownership of the shares. The FSPA also provided a variety of vesting dates for the stock.

The FSPA provided DivX with the right to repurchase Hylton's shares under a variety of circumstances. DivX had a right of first refusal that entitled it to repurchase Hylton's stock if he attempted to sell those shares to another investor, subject to the conditions set forth in the right of first refusal. DivX also had the right to repurchase unvested shares, subject to specified conditions, if Hylton's employment was terminated by DivX for cause within the meaning of the FSPA, or he attempted to transfer the unvested shares in violation of the agreement.

### *The Employment Termination and Resulting Underlying Lawsuit*

On February 16, 2001, DivX advised Hylton his employment was being terminated. It did not give him any reason for the termination, and did not inform him the termination had been for cause for any of the reasons specified in the FSPA. DivX also did not provide Hylton with the requisite notice under the FSPA that it was exercising its option to repurchase the unvested shares, and did not tender payment for those shares as required by the FSPA.[3]

Shortly after Hylton's employment termination, he retained a law firm to resolve his disputes with DivX. The law firm was unable to negotiate an agreed resolution of the dispute, and an attempt to mediate the dispute was similarly unsuccessful. However, by December 2001, Hylton informed the law firm he no longer wished it to represent him.

Hylton had been in contact with Rogozienski about the dispute during the latter half of 2001. Hylton sought legal advice from Rogozienski because Hylton believed his employment had been wrongfully terminated. Rogozienski advised Hylton he should file suit for wrongful employment termination. Rogozienski also advised Hylton that his lawsuit should include a claim seeking to confirm the stock ownership. Rogozienski induced Hylton to sign a contract for legal services (the Contingency Contract), which provided Rogozienski would collect a contingency fee of one-third of all "Consideration Paid, Collected or Recovered" as a result of the lawsuit, *including*

---

[3] Rogozienski provided contrary evidence, asserting that DivX did purport to terminate Hylton for cause and did provide the requisite notice electing to repurchase the unvested shares. However, this evidentiary dispute (like most of the evidentiary assertions raised by Rogozienski on appeal) is irrelevant to the first step in evaluating an anti-SLAPP motion. (*Freeman, supra,* 154 Cal.App.4th at p. 733 ["These merits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity."].)

one-third of all of the stock "confirmed, awarded or otherwise retained by [Hylton]." Based on Rogozienski's advice, Hylton agreed to file a lawsuit seeking, among other things, to confirm Hylton's ownership of the stock.

Hylton's lawsuit against DivX was filed in February 2002. Rogozienski subsequently advised Hylton that he could lose his stock if he did not settle the lawsuit, and in August 2003 Hylton agreed to settle the lawsuit against DivX. Under the terms of that settlement, DivX confirmed it could not repurchase any of the shares owned by Hylton and consented to Hylton's transfer of one million of those shares to Rogozienski. Hylton believed those shares had a value of at least $6 million.

## B. *The Present Lawsuit*

Hylton's present lawsuit against Rogozienski pleaded claims for rescission of the Contingency Contract and restitution of the stock, and for declaratory relief and damages, alleging the Contingency Contract should be rescinded because it called for an unconscionable fee, and Hylton was induced to enter into the Contingency Contract because Rogozienski breached his fiduciary duties to Hylton. The first amended complaint (FAC) alleged, in essence, that Hylton's ownership of the DivX stock was never in significant dispute because DivX had neither terminated Hylton's employment for cause nor exercised any purported repurchase option. Accordingly, Hylton alleged the legal fee charged to confirm his ownership was an unconscionable fee, within the meaning of rules 3-300 and 4-200 of the State Bar Rules of Professional Conduct, and additionally alleged that Rogozienski, although recognizing DivX had no colorable claim to repurchase the stock, concocted a scheme to extract an excessive fee by (1) telling Hylton that (in addition to pursuing the wrongful employment termination claim) legal action was necessary to protect Hylton from DivX's claim to the stock and thereby inducing Hylton to sign the Contingency Contract, (2) manufacturing a dispute with DivX over the stock, and (3) thereafter advising and inducing Hylton to settle the entire action to trigger Rogozienski's claim to one-third of the stock under the Contingency Contract. Hylton alleged this course of conduct entitled him to rescind the Contingency Contract or to recover damages.

## C. *The Anti-SLAPP Motion*

Rogozienski filed an anti-SLAPP motion to strike Hylton's complaint. He asserted the threshold burden was satisfied because the complaint sought to pursue claims that arose from statements made before a judicial proceeding or in connection with an issue under consideration by a judicial body, and therefore the underlying conduct constituted protected petitioning activity

within the meaning of the anti-SLAPP statute. He argued the burden therefore shifted to Hylton to show probable success on the merits, and Hylton could not meet that burden.

Hylton opposed the motion, arguing his claim against Rogozienski did not arise from protected petitioning activity by Rogozienski, but was instead based on his alleged ethical violations and breaches of fiduciary obligations. Hylton cited and relied on numerous cases[4] holding a client's claim against his former attorney for misfeasance during the course of representation does not arise from protected activity within the ambit of the anti-SLAPP statute merely because the alleged misfeasance by the attorney occurred in the context of litigation. Hylton asserted those cases were controlling and precluded Rogozienski from demonstrating his threshold burden of showing the anti-SLAPP statute was applicable to the present action.

The trial court agreed Hylton's complaint did not arise from protected activity, and denied the anti-SLAPP motion. Rogozienski appealed the order.[5]

II

LEGAL STANDARDS

A. *The Anti-SLAPP Law*

 The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right

---

[4] Among the cases cited by Hylton below were *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537–1540 [52 Cal.Rptr.3d 712] (clients' claim against former attorney for malpractice not subject to anti-SLAPP merely because it occurred as part of litigation), *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 630–632 [7 Cal.Rptr.3d 715] (same), and *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1187–1190 [20 Cal.Rptr.3d 621] (client's claims against former attorney for violating rule 3-310 of the State Bar Rules of Professional Conduct not within anti-SLAPP merely because it occurred in context of litigation).

[5] Rogozienski's original anti-SLAPP motion, directed at Hylton's original complaint, was denied by the trial court because it concluded the claims stated did not arise from protected activity. However, because the court believed the claims originally pleaded would be barred by limitations absent allegations bringing Hylton's claims under the four-year limitations period of section 340.6, the court sustained Rogozienski's demurrer with leave to amend. After Hylton filed the FAC, Rogozienski resurrected his anti-SLAPP motion and asserted legally indistinguishable arguments as to why the claims pleaded in the FAC arose from petitioning conduct. Hylton argued the new motion to strike should be denied because the previous ruling had determined Hylton's claims did not arise from protected activity, and also asserted Rogozienski's motion was an untimely motion for reconsideration. The court reached the merits of the anti-SLAPP motion but again denied the motion, concluding the core of the claims was not based on petitioning activity. Rogozienski's appeal is from the latter order.

of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the statute is to encourage participation in matters of public significance by allowing a court to promptly dismiss unmeritorious actions or claims brought to chill another's valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. (§ 425.16, subd. (a).)

The anti-SLAPP law involves a two-step process for determining whether a claim is subject to being stricken. In the first step, the defendant bringing an anti-SLAPP motion must make a prima facie showing that the plaintiff's suit is subject to section 425.16 by showing the defendant's challenged acts were taken in furtherance of his or her constitutional rights of petition or free speech in connection with a public issue, as defined by the statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [3 Cal.Rptr.3d 636, 74 P.3d 737].) If the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step. (*City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1594 [66 Cal.Rptr.3d 862]; *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 811 [63 Cal.Rptr.3d 575].)

If the defendant satisfies the first step, the burden shifts to the plaintiff to demonstrate there is a reasonable probability of prevailing on the merits at trial. (§ 425.16, subd. (b)(1).) In this phase, the plaintiff must show both that the claim is legally sufficient and that there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5; *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 358 [42 Cal.Rptr.2d 464].) In making this assessment, the court must consider both the legal sufficiency of and evidentiary support for the pleaded claims. (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398–399 [13 Cal.Rptr.3d 353].)

On appeal, we review de novo the trial court's ruling on the anti-SLAPP motion to strike the complaint. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 339 [9 Cal.Rptr.3d 197].)

B. *The Gravamen of the Claim Controls Application of the Anti-SLAPP Law*

Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed (*Equilon, supra,* 29 Cal.4th at p. 60, fn. 3) and that a

plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90–92 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Accordingly, we disregard the labeling of the claim (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 522 [37 Cal.Rptr.3d 381]) and instead "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies" and whether the trial court correctly ruled on the anti-SLAPP motion. (*Ramona Unified School Dist.*, at pp. 519–522.) We assess the principal thrust by identifying "[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189 [6 Cal.Rptr.3d 494].) If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. (*Martinez*, at p. 189.)

## III

## ANALYSIS

*The Gravamen of Hylton's Claims Do Not Rely on Petitioning Activity*

The trial court found Rogozienski did not establish his initial burden of showing Hylton's claims arose from conduct by Rogozienski that constituted protected petitioning activity. Although petitioning activity is part of the evidentiary landscape within which Hylton's claims arose, the gravamen of Hylton's claims is that Rogozienski engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to Hylton: Rogozienski falsely advised Hylton there was some doubt about Hylton's entitlement to the DivX stock, Rogozienski concocted and carried out a scheme to manipulate his representation of Hylton in a manner to justify extracting an excessive fee, and he falsely advised Hylton that he could lose all of his stock to induce Hylton to consent to an agreement that transferred $6 million in DivX stock to Rogozienski.

Under circumstances analogous to those presented here, this court in *Freeman, supra*, 154 Cal.App.4th 719 rejected an attorney's claim that the anti-SLAPP statute applied to two former clients' claim against the attorney. In *Freeman*, two clients sued their former attorney (Schack) based on allegations Schack had entered into a contract in which he assumed attorney-client duties toward the clients, but thereafter abandoned them to represent adverse interests in the same and different litigation, thus breaching his

contractual and fiduciary obligations toward them. Schack undertook attorney-client duties to the plaintiffs (the Freeman class) to represent them and to use his best efforts to obtain a full recovery of damages to the Freeman class, but allegedly breached the agreement and his fiduciary duties by subsequently withdrawing as their attorney and undertaking to represent a new plaintiff and class (the Hemphill class), by filing a new lawsuit on behalf of the Hemphill class, and by concluding the Hemphill class litigation in a manner adverse to the interests of his former clients. (*Id.* at pp. 723–725.)

■ The trial court granted Schack's motion to strike the complaint under the anti-SLAPP statute based, in part, on its crediting of Schack's argument that " 'all of the conduct alleged in the Complaint arose out of petitioning activity, to-wit, it all relates to the two underlying class actions.' " (*Freeman, supra,* 154 Cal.App.4th at p. 726.) This court (relying on many of the same cases cited below by Hylton here) reversed the trial court's ruling, concluding that although "[t]here is no doubt plaintiffs' causes of action have as a major focus Schack's actions in representing Hemphill in *Freeman II [Freeman v. San Diego County Board of Realtors* (S.D.Cal., No. CV-98-00139)], filing a new action on Hemphill's behalf and settling Hemphill's action[,] . . . the fact plaintiffs' claims are related to or associated with Schack's litigation activities is not enough. 'Although a party's litigation-related activities constitute "act[s] in furtherance of a person's right of petition or free speech," it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute.' " (*Id.* at pp. 729–730, quoting *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at p. 1537.)

The *Freeman* court then examined *Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th 624 and *Benasra v. Mitchell Silberberg & Knupp LLP, supra,* 123 Cal.App.4th 1179, two of the cases cited by Hylton below, and concluded those cases demonstrated the anti-SLAPP statute does not apply to a client's claim against his or her former attorney for breach of fiduciary duty (as in *Benasra*) or for malpractice (as in *Jespersen*) merely because the client's claim against the former attorney followed or was associated with petitioning activity by the attorney on the client's behalf. (*Freeman, supra,* 154 Cal.App.4th at pp. 730–732.) Instead, explained *Freeman,* "[i]t is 'the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' " (*Id.* at p. 727, quoting *Martinez v. Metabolife Internat., Inc., supra,* 113 Cal.App.4th at p. 188.) *Freeman* concluded the gravamen of the client's claims was not that the attorney filed litigation or settled litigation, but was instead that he violated his fiduciary duties by undertaking to represent a

party with interests adverse to his former client, and the allegations concerning the attorney's petitioning activity were incidental to the core claims alleged against the attorney. (Accord, *Kolar v. Donahue, McIntosh & Hammerton, supra*, 145 Cal.App.4th at p. 1540 [anti-SLAPP statute inapplicable to malpractice claim because in malpractice suit "the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so"]; see also *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1626–1629 [90 Cal.Rptr.3d 669] [claim against former attorneys based on alleged conflict of interest not subject to anti-SLAPP].)

■ The rationales of *Freeman, Jespersen, Kolar*, and *Benasra* convince us the trial court correctly ruled Rogozienski did not meet his threshold showing that Hylton's claims arise from petitioning activity within the purview of the anti-SLAPP statute. Hylton's claims allude to Rogozienski's petitioning activity, but the gravamen of the claim rests on the alleged violation of Rogozienski's fiduciary obligations to Hylton by giving Hylton false advice to induce him to pay an excessive fee to Rogozienski.

Rogozienski's opening brief on appeal does not mention *Freeman, Jespersen, Kolar*, or *Benasra*, and thus necessarily made no effort either to distinguish those cases or to articulate any reason for us to depart from their analysis.[6] Instead, Rogozienski reiterates that many of the acts described in Hylton's complaint qualify as petitioning activity. However, paraphrasing *Freeman*, while "[t]here is no doubt [Hylton's] causes of action have as a

---

[6] Although Hylton's opposition to the anti-SLAPP motion below relied heavily on *Jespersen, Kolar*, and *Benasra*, and was the apparent basis for the trial court's ruling, Rogozienski elected on appeal to ignore those cases until his reply brief. Even assuming Rogozienski's attempt to distinguish those cases is properly before this court (but see *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788] [" 'Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' "]), we are unpersuaded by Rogozienski's arguments. Although those cases did involve theories of recovery against the defendant attorney that might not (because of possible statute of limitations issues) be viably pleaded against Rogozienski, the core conduct in those cases was (as here) rooted in the allegation that the attorney owed his client fiduciary obligations violated by the attorney's conduct toward his client. Hylton's action pleads a claim for intentional misrepresentation and a fraudulent scheme by Rogozienski, the purpose of which was to extract an excessive fee from Hylton, and we are unpersuaded by Rogozienski's assertion that such conduct (if established) would not constitute a violation of an attorney's fiduciary duties (as was alleged in *Freeman* and *Benasra*) or a violation of the State Bar Rules of Professional Conduct (as was alleged in *Freeman*). Accordingly, at least for purposes of the anti-SLAPP statute, the distinctions noted by Rogozienski between the present case and *Freeman, Jespersen, Kolar*, and *Benasra* appear to be distinctions without differences.

major focus [Rogozienski's] actions in representing [Hylton] in . . . filing [an] action . . . and settling [the] action[,] . . . the fact [Hylton's] claims are related to or associated with [Rogozienski's] litigation activities is not enough." (*Freeman, supra,* 154 Cal.App.4th at p. 729.)

■ Rogozienski also asserts that "[o]verall, [Hylton's] claims are the equivalent of a malicious prosecution action against an attorney, brought not by a third party defendant, but rather by the attorney's former client," and a malicious prosecution action is squarely within the purview of the anti-SLAPP statute. (See, e.g., *Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1421 [50 Cal.Rptr.3d 65].) However, the fact that a malicious prosecution action by a third person against the attorney may fall within the anti-SLAPP statute provides no assistance to an attorney sued by his client for breach of fiduciary duties. In *Jespersen,* the attorneys apparently made the same argument, asserting the malpractice claim against them was subject to the anti-SLAPP statute because an attorney who is made a defendant based upon written or oral statements made on behalf of clients during judicial proceedings would have standing to interpose an anti-SLAPP motion. *Jespersen* rejected the argument, stating that although an attorney named in a malicious prosecution action might qualify for anti-SLAPP protections, "[i]t does not follow . . . that a legal malpractice action may be subject to a SLAPP motion merely because it shares some similarities with a malicious prosecution action and involves attorneys and court proceedings. '[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity . . .' [citation] [a]nd a moving defendant's burden . . . is not met simply by showing that the *label* of the lawsuit appears to involve the rights of free speech or petition; he or she must demonstrate that the *substance* of the plaintiff's cause of action was an act in furtherance of the right of petition or free speech." (*Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th at p. 630.)

Rogozienski has cited no pertinent authority suggesting a client's action against his or her attorney, whether pleaded as a malpractice claim, a breach of fiduciary duty claim, or any other theory of recovery, is subject to the anti-SLAPP statute merely because some of the allegations refer to the attorney's actions in court. We conclude the trial court correctly ruled, because Rogozienski had not met his threshold burden, the anti-SLAPP motion was properly denied, rendering unnecessary any consideration of Rogozienski's arguments that Hylton failed to show probable success on the merits. (*City of Riverside v. Stansbury, supra,* 155 Cal.App.4th 1582, 1594.)

## DISPOSITION

The order is affirmed. Plaintiff is entitled to costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 2, 2009, S176888.