Filed 3/22/13  Three Rivers Provider  Network v. Shamoun CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THREE RIVERS PROVIDER NETWORK, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> RONSON SHAMOUN et al., <br><br> Defendants and Respondents. | D062343 <br><br><br> (Super. Ct. No. 37-2012-00090505-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Reversed.

Three Rivers Provider Network, Inc. (TRPN) appeals from the trial court's order granting a special motion to strike its lawsuit against Ronson Shamoun and the Law Office of Ronson J. Shamoun, a Professional Law Corporation (collectively, Shamoun) as a strategic lawsuit against public participation under Code of Civil Procedure section

425.16 (commonly known as the anti-SLAPP statute).[1] As we will explain, we conclude that Shamoun did not meet his burden to establish that the claims against him arose from activity protected by the anti-SLAPP statute. Accordingly, we reverse the order granting the special motion to strike.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

TRPN — a company in the healthcare field — became the subject of an investigation by the Internal Revenue Service's Criminal Investigation Division (IRS-CID), including a raid on TRPN's offices by IRS-CID that took place in March 2011. According to a declaration filed by Ronson Shamoun, TRPN corporate officer Todd Breeden retained Shamoun to represent him in connection with the IRS investigation. Breeden quit his job at TRPN in November 2011, and then sent TRPN a draft complaint alleging that Breeden was constructively discharged for refusing to participate in "ongoing criminal violations at TRPN."[2] TRPN and Breeden participated in settlement negotiations, in which Shamoun was involved, until January 2012, when TRPN preemptively filed this action against Shamoun and Breeden.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2] According to Breeden's draft complaint, TRPN expected Breeden to "sign fraudulent documents," "make false statements about various financial transactions" and "engage in conduct which Mr. Breeden now believes is illegal conduct designed to evade federal income tax laws."

TRPN's complaint alleges numerous acts of wrongdoing by Breeden and Shamoun, consisting generally of stealing from TRPN, engaging in self-dealing, and continuing to hold privileged and confidential documents that belong to TRPN.

According to TRPN's complaint, in March 2011, Shamoun "pitched himself to TRPN as an experienced, skilled, ethical tax defense attorney, who could and would jointly defend all parties," and "routinely acted as counsel for the company and other individuals involved with the company, despite knowing of the conflict of interest between his client, Breeden, and the company." The complaint alleges that Shamoun used his role as attorney to "enrich himself personally, using information gathered . . . for personal self-enrichment and client embezzlement." More specifically, according to the complaint, in the time period between March and November 2011 (1) Shamoun "solicited client confidences from the company's counsel and other jointly interested individuals connected to TRPN," which he and Breeden "would then misuse . . . for their personal enrichment"; (2) "Shamoun and Breeden conspired to liquidate corporate assets," "buy[ing] up the assets at a severe discount and manag[ing] the brokering of the sale of such assets for Shamoun's personal self-enrichment" and the enrichment of his family, friends, business partners and clients; (3) Shamoun "issued false invoices to [TRPN] for work never performed for TRPN," and engaged in "bill-padding or false invoicing"; (4) "Shamoun went into business with Breeden, including involving Breeden with a business that competed with [TRPN]"; and (5) Shamoun "prepared incorrect letters for Breeden whereby Breeden claimed he needed bonuses to cover tax obligations." In addition, TRPN alleges that "Breeden and Shamoun continue to have possession of

3

substantial corporate records and documentation" and "refuse to recognize the right of privilege over the corporate information they obtained."

TRPN's complaint asserts eight causes of action against Shamoun: (1) declaratory relief as to "the proprietary nature of corporate records and privileged nature of information received by the defendants"; (2) breach of contract, alleging that Shamoun breached a professional services contract, which benefited TRPN as a third party, by inducing Breeden to access confidential corporate information and by arranging for Breeden to work for a competitor of TRPN; (3) breach of fiduciary duty, alleging that Shamoun published and disseminated confidential company information to third parties and used it for personal gain; (4) conspiracy to breach fiduciary duty, alleging that Shamoun aided and abetted Breeden to breach his fiduciary duty to the company by engaging in self-dealing; (5) fraud, alleging that Shamoun misrepresented that he was protecting the company's interest, was invoicing for work performed for the company rather than for Breeden, and would honor the confidentiality of company information; (6) conspiracy to convert corporate funds, alleging that Shamoun obtained payment of $370,000 from TRPN for professional services provided to Breeden, not to TRPN; (7) conspiracy to convert corporate property, alleging that Shamoun wrongfully took proprietary and privileged company information; and (8) professional malpractice,

4

alleging that Shamoun engaged in conflicted representation and misused TRPN's privileged and confidential information for personal gain.[3]

Shamoun filed a special motion to strike under the anti-SLAPP statute. He argued that TRPN's claims against him arose from activity protected by the anti-SLAPP statute because TRPN filed its complaint as "a preemptive strike against Mr. Breeden and his counsel for their anticipated petition for redress of grievances in the form of Mr. Breeden's constructive discharge claim" and the "[c]omplaint was simply designed to prevent Mr. Breeden from exercising his constitutional rights of petition and free speech to file his lawsuit." The trial court granted the motion, concluding that the causes of action against Shamoun arose from protected activity and that TRPN had not demonstrated a probability of prevailing on its claims.[4] TRPN filed a notice of appeal. (§ 904.1, subd. (a)(13).)

---

[3]    With respect to Breeden, the complaint alleges that, among other things, Breeden "routinely diverted money from TRPN to himself" between 2005 and 2011, misrepresented his professional qualifications, "falsified tax returns" and "precipitated an IRS inquiry." The complaint alleges causes of action against Breeden for declaratory relief, conversion, intentional misrepresentation and conspiracy to commit conversion.

[4]    TRPN filed an untimely opposition in the trial court, which — at Shamoun's request — the trial court "refuse[d] to consider." However, the trial court's minute order also explained its reasons for granting the special motion to strike "[e]ven if the Court had considered the opposition," concluding, without analysis, that the causes of action against Shamoun arose from activity protected by the anti-SLAPP statute because TRPN had not disputed that point in its opposition. In our de novo review, because moving parties in a special motion to strike have the initial burden to establish that the causes of action alleged against them arise from protected activity, we do not follow the trial court's approach of relying on TRPN's failure to oppose. (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417 ["On a special motion to strike under the anti-SLAPP statute, '[t]he moving party bears the initial burden of establishing a prima facie showing the

II

DISCUSSION

A.    *Standard of Review*

"Review of an order granting or denying a motion to strike under section 425.16 is de novo.  [Citation.]  We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'  (§ 425.16, subd. (b)(2).)  However, we neither 'weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269.)

B.    *Applicable Legal Standards*

The anti-SLAPP statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§425.16, subd (b)(1).)  "The analysis of an anti-SLAPP motion thus involves two steps.  'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then must consider

---

plaintiff's cause of action arises from the defendant's free speech or petition activity.'"].)  Instead, we focus on whether Shamoun has met his initial burden.

6

whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.) "If the defendant does not demonstrate [the] initial prong, the court should deny the anti-SLAPP motion and need not address the second step." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271 (*Hylton*).)

Section 425.16, subdivision (e) specifies the type of activity protected by the anti-SLAPP statute: An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)[5]

---

5    When the first two subparts of section 425.16, subdivision (e) are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an

"[T]he statutory phrase 'cause of action . . . arising from' means . . . that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*).) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' . . . The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a . . . dispute into a SLAPP suit." (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-478, citation omitted.)

C.     *Shamoun Has Not Established that the Causes of Action Against Him Arise from Protected Activity*

We now turn to an analysis of whether Shamoun has met his burden to demonstrate that the causes of action against him arise from activity protected by the anti-SLAPP statute.

---

official body), the moving party is not required to independently demonstrate that the matter is a "public issue" within the statute's meaning. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 (*Briggs*).)

1. *Shamoun Has Not Established that the Claims Against Him Arise from Protected Activity Because They Are Based on Breeden's Threat to File Suit Against TRPN*

Shamoun first argues that the claims against him fall within the scope of the anti-SLAPP statute because they arise from Breeden's draft complaint and associated settlement discussions, in which Shamoun participated. Shamoun contends that the draft complaint and his activity associated with it constitute protected activity as described in section 425.16, subdivision (e)(2) because the complaint constitutes a "written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (*Ibid.*)

The initial premise of Shamoun's argument is sound. It is well-settled that prelitigation conduct, such as the preparation of a draft complaint, can constitute free speech or petitioning activity protected by the anti-SLAPP statute. (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1162 ["There is no question that 'a prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement "'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration"'"'"].) "This includes qualifying acts committed by attorneys in representing clients in litigation." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

The problem with Shamoun's argument, however, is that he must establish the claims against him *arise from* the protected activity that he has identified. (§425.16, subd (b)(1).) Case law establishes that a lawsuit does not *arise from* threatened litigation for the purpose of the anti-SLAPP statute merely because it is filed in anticipation of

9

threatened litigation. "[A] claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic." (*Cotati*, *supra*, 29 Cal.4th at p. 78.) "California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.'" (*Id.* at p. 77.) The proper inquiry is not what triggered or motivated the lawsuit, but "'whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.'" (*Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 477.)

Here, even though TRPN may have been *motivated* to preemptively file suit against Shamoun and Breeden because Breeden threatened to file a draft complaint for constructive discharge, the causes of action asserted in TRPN's complaint are not *based on* the content or existence of Breeden's draft complaint. Instead, as we have explained, the claims against Shamoun focus on alleged wrongdoing between March and November 2011, consisting primarily of alleged self-dealing, breaches of loyalty, and taking of confidential documents. Shamoun's participation in Breeden's settlement negotiations concerning the draft complaint does not constitute "'[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim[s]'" asserted in TRPN's lawsuit. (*Hylton*, *supra*, 177 Cal.App.4th at p. 1272.) At most Breeden's draft complaint "lurk[s] in the background" and "'"triggered"'" TRPN's lawsuit (*Episcopal Church Cases*, *supra*, 45 Cal.4th at pp. 477-478), but TRPN's lawsuit is not *based on* the

10

existence or content of Breeden's draft complaint, and thus the lawsuit does not, for the purpose of the anti-SLAAP statute, arise out of the petitioning and free speech activity associated with Breeden's draft complaint.[6]

To the extent that Shamoun is arguing that TRPN's claims against him arise from protected activity because they allege breaches of professional duties committed in the context of a threatened litigation or an official proceeding associated with the IRS-CID investigation, that claim fails as well. A claim against an attorney for malpractice or other misconduct does not qualify as protected activity merely because it was committed against the backdrop of petitioning activity. "[T]he anti-SLAPP statute does not apply to a client's claim against his or her former attorney for breach of fiduciary duty . . . or for malpractice . . . merely because the client's claim against the former attorney followed or was associated with petitioning activity by the attorney on the client's behalf." (*Hylton*, *supra*, 177 Cal.App.4th at p. 1273.) Thus for example, in a legal malpractice action, "[t]hat the malpractice allegedly occurred in the course of petitioning activity does not mean the claim arose from the activity itself." (*Kolar v. Donahue, McIntosh &*

---

[6]     We also reject any argument that Shamoun is being sued based on protected activity insofar as, in the course of representing Breeden during the IRS-CID investigation, he made a statement or writing "before" or in "connection with" an "executive . . . proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2).) Although certain official proceedings conducted by an agency such as the IRS might qualify as an official proceeding (see *Briggs*, *supra*, 19 Cal.4th at p. 1115 [statements made in connection with seeking administrative action, civil litigation, and a Department of Housing and Urban Development investigation]),TRPN's complaint does not identify any statement or writing made by Shamoun in any official IRS proceeding.

11

*Hammerton* (2006) 145 Cal.App.4th 1532, 1535.)  Instead, the moving party " 'must demonstrate that the *substance* of the plaintiff's cause of action was an act in furtherance of the right of petition or free speech.' "  (*Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1185.)  Shamoun cannot meet this burden here, because — as we have explained — TRPN's claims are based on Shamoun's alleged acts of self-dealing and professional malpractice, and are not based on any activity undertaken by Shamoun in the furtherance of the right to petition or to exercise the right to free speech.

2.	*Shamoun Has Not Established that the Claims Against Him Fall Under the Anti-SLAPP Statute on the Ground that They Arise from Free Speech or Petitioning Activity in Connection with an Issue of Public Interest*

Shamoun's final argument invokes section 425.16, subdivision (e)(4), which states that protected activity under the anti-SLAPP statute includes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e)(4).)  According to Shamoun, the "[c]omplaint pertains to statements, writing and other conduct by [Shamoun] which relate to a topic that could affect . . . a large number of TRPN's clients, customers and employees, that is the IRS-CID criminal investigation of a prominent local company . . . and its founder . . . for tax fraud."

"The 'public interest' component of section 425.16, subdivision (e)(3) and (4) is met when 'the statement or activity precipitating the claim involved a topic of widespread public interest,' and 'the statement . . . in some manner itself contribute[s] to the public debate.' "  (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1246 (*Huntingdon*).)  The public interest requirement is

12

met in cases where "(1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; or (3) the statement or activity precipitating the claim involved a topic of widespread public interest." (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 111 (*Mann*).) "[C]ourts have . . . construed '"public interest"' 'to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.'" (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 372.)

Shamoun contends that the IRS-CID investigation of TRPN was a matter of public interest because TRPN is allegedly a "high-profile" company. Without even addressing whether Shamoun has established that the IRS-CID investigation of TRPN is an issue of public interest, we reject Shamoun's attempt to use the public interest component of the anti-SLAPP statute to establish that the causes of action against him arise from protected activity. Shamoun's argument fails for the fundamental reason that TRPN does not base Shamoun's purported liability on any statement he made about the IRS-CID investigation or any petitioning activity by Shamoun during the IRS-CID investigation. Although the wrongdoing alleged by TRPN was purportedly committed against the *backdrop* of the IRS-CID investigation, Shamoun is not being sued because of anything he said about the IRS-CID investigation or any official act that he took during that investigation that could be described as petitioning activity. (See *Mann*, *supra*, 120 Cal.App.4th at p. 111 [concluding that statements did not concern a public issue because they were made about

13

a company's "specific business practices," not about the specific issue of public interest identified by the moving party]; *Hylton*, *supra*, 177 Cal.App.4th at p. 1274 [lawsuit against attorney was not based on his petitioning activity even though the lawsuit "allude[d] to [his] petitioning activity" as relevant background facts].)[7]

Shamoun also contends that TRPN's claims against him arose from statements he made about another matter of public interest, namely "[Shamoun's] right to vigorously defend its clients and safeguard attorney-client communications." We reject this argument because TRPN's causes of action against Shamoun are not based on any statements he made about his right to defend his client or preserve the confidentiality of attorney client communications. On the contrary, the complaint is based on allegations that Shamoun violated TRPN's confidence, committed malpractice and engaged in self-dealing.

Finally, Shamoun contends that TRPN's claims against him are based on statements about matters of public interest because, in the course of his alleged self-dealing in profiting from the sale of TRPN's assets, he "[d]iscuss[ed] the assets to be sold with potential interested purchasers." He claims that such discussions were in connection

---

[7]    Shamoun also argues that to the extent the public has an interest in the IRS-CID investigation of TRPN, Shamoun's activity associated with the draft complaint constitutes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)) in that the draft complaint references the IRS-CID investigation. We need not decide whether there is any merit to this theory because, as we have explained, TRPN's causes of action do not *arise from* the draft complaint or any of Shamoun's conduct related to the draft complaint merely because the draft complaint may have *motivated* TRPN to file this action against Shamoun and Breeden.

14

with an issue of public interest because they concerned "the proper disposition of assets following the IRS-CID raid at TRPN." We reject this argument because such discussions clearly do not constitute discussions on an issue of public interest. Instead of involving "'a topic of widespread public interest'" and "'in some manner itself contribut[ing] to the public debate,'" as is required to constitute protected activity (*Huntingdon*, *supra*, 129 Cal.App.4th at p. 1246), the complaint describes Shamoun's statements as offers to clients, family, friends and business partners to buy TRPN's assets at discount prices, which are statements about purely personal business arrangements.

In sum, Shamoun has failed to satisfy his burden to demonstrate that the claims against him arise from activity protected by the anti-SLAPP statute.[8] The trial court accordingly erred in granting Shamoun's special motion to strike.

---

[8] Because Shamoun did not meet his burden on the first prong of the anti-SLAPP analysis, we need not, and do not, consider the second prong of the analysis, namely whether TRPN demonstrated a probability of prevailing on its claims against Shamoun. (*Hylton*, *supra*, 177 Cal.App.4th at p. 1271 [court does not consider second prong of anti-SLAPP analysis when the defendant does not carry its burden on first prong].)

DISPOSITION

The order granting Shamoun's special motion to strike is reversed, and this action is remanded for further proceedings.

_____

IRION, J.

WE CONCUR:

_____

McCONNELL, P. J.

_____

NARES, J.

16