Filed 8/29/13  Villa v. American Contractors Indemnity CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM VILLA et al., | D062393 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00092574-CU-MC-NC) |
| AMERICAN CONTRACTORS INDEMNITY COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Marshall Law and Daniel Ernest Marshall for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Mark A. Oertel for Defendants and Respondents.

Plaintiffs and appellants William Villa (William) and Patricia Villa (Patricia), husband and wife (collectively the Villas), appeal the trial court's order granting the special motion to strike of defendants and respondents American Contractors Indemnity

Company (erroneously sued as American Contractors Indemnity Corporation; hereafter ACIC) and its legal counsel, Lanak & Hanna PC (L&H) (collectively defendants), arising out of proceedings in which L&H represented ACIC in an underlying action and obtained for ACIC a default judgment against the Villas on ACIC's first amended cross-complaint. Affirmed.

FACTUAL AND PROCEDURAL OVERVIEW

A. *Overview*

In 2005, ACIC, acting as a surety, issued pursuant to Financial Code section 22112, a $25,000 mortgage brokers bond (bond) to Acclaim Financial Services (Acclaim), of which William was a principal.[1]  As a condition of issuing the bond, Acclaim, William and Patricia agreed to indemnify ACIC "against all losses, liabilities, costs, damages, attorneys' fees and expenses" that ACIC as surety incurred on the bond (indemnity agreement).

In October 2008, William R. and Gretchen Hellar Charitable Remainder Unitrust filed an action in the San Diego County Superior Court (case No. 37-2008-00059113-CU-BC-NC) against Stephanie Ruiz (Stephanie), William and Acclaim alleging various causes of action, including an eighth cause of action solely against ACIC to foreclose on the bond (hereafter the Heller action).  The plaintiffs in the Heller action alleged that pursuant to an investor services agreement, they bought through Stephanie a $21,450 loan as an investment from Acclaim.  The plaintiffs in the Heller action further alleged that

[1]    California Finance Lenders Law (Fin. Code, § 22000 et seq.) requires among other conditions that mortgage loan brokers be licensed and bonded.  (*Id.*, §§ 22100 & 22112.)

2

Stephanie "intentionally transferred the funds for her own benefit and never completed the loan documentation with the borrower." As such, they made a claim on the bond issued by ACIC.

In response to the Heller action, L&H on behalf of ACIC in March 2009 demanded that Acclaim, William and Patricia defend and/or indemnify it under the indemnity agreement. When the Villas and Acclaim did not accept this request, ACIC appeared and defended itself in the Heller action. In October 2009, ACIC settled the Heller action for $23,000 and, in January 2010, filed its first amended cross-complaint against the Villas and Acclaim, alleging causes of action for breach of contract, indemnity and declaratory relief.

Of significance here, the Villas on February 11, 2010 were served with ACIC's first amended cross-complaint. ACIC's counsel L&H on February 22, 2010 filed with the court the proofs of service on the summons and first amended cross-complaint. When the Villas and Acclaim failed to respond to the first amended cross-complaint, ACIC requested entry of default. In June 2010, the court entered a default judgment on ACIC's first amended cross-complaint against William, Patricia and Acclaim for $36,050.33 (default judgment), which amount included recovery for damages, attorney fees, costs and prejudgment interest.

B. *The Villas and Acclaim Seek Relief from the Default Judgment*

The Villas and Acclaim did not seek to vacate or otherwise attack the default judgment in the Heller action. Instead, they filed a 23-page complaint in the United

3

States District Court, Southern District of California (case No. 10cv1885-AJB-WMC) against the plaintiffs in the Heller action, ACIC and its attorneys, L&H, and Stephanie among other parties, alleging claims for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and seeking damages and punitive damages among other relief (the RICO action).

As relevant here, in connection with their complaint, William filed a declaration under penalty of perjury stating that he "was served [with] a summons and cross complaint by [ACIC] represented by Collin Cook of the law firm of [L&H]" and that ACIC "had no trouble" serving him inasmuch as his home address was listed as a public record with the "State of California's Department of Real Estate . . . ." According to the complaint in the RICO action and as declared by William in his declaration in support thereof, the Heller plaintiffs (as opposed to ACIC) allegedly did not personally serve William, Patricia or Acclaim but instead served them by publication "in an effort to gain control of financial companies so as to legitimize funds under the[ir] control . . . ."

The record shows that ACIC, including several of its officers and directors who were added to the lawsuit, and L&H moved to dismiss the RICO action, asserting among other contentions that the RICO action was an improper collateral attack on the default judgment obtained by ACIC in the Heller action.

In June 2011, United States District Court Judge Anthony Battaglia granted the motion to dismiss of ACIC and L&H. In so doing, Judge Battaglia noted that the complaint filed by the Villas and Acclaim in the RICO action was "difficult to follow and

4

understand"; that it generally alleged that the Heller plaintiffs "engaged in a scheme to illegally invest money into Plaintiffs' licensed mortgage firm [e.g., Acclaim] and act as unlicensed mortgage brokers and lenders" in order to gain a controlling interest in Acclaim; and that ACIC and L&H also "engaged in a pattern of fraud that creates fictitious financial losses in violation of the terms of the bonds and pass along the fictitious losses to the principals of the bonds." Judge Battaglia noted that ACIC settled with the Heller plaintiffs on the foreclosure claim in the Heller action and that in consideration for the settlement, the Heller plaintiffs assigned all of their claims against the Villas and Acclaim to ACIC.

Judge Battaglia ruled inter alia that the RICO action was either an impermissible direct or de facto collateral attack on the state court judgment in the Heller action and granted the motion to dismiss under the *Rooker-Feldman* doctrine, which "prevents the lower federal courts from exercising subject matter jurisdiction over cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)." In reaching his decision, Judge Battaglia found after granting a request for judicial notice that the first amended cross-complaint brought by ACIC against the Villas and Acclaim in the Heller action "was properly served [and] resulted in a default judgment against [cross-defendants] Villa and Acclaim for failure to respond to the cross-complaint."

5

C. *The Villas and Acclaim Go Back to State Court to Challenge the Default Judgment*

According to ACIC and L&H, the Villas and Acclaim returned to state court and filed a motion pursuant to Code of Civil Procedure[2] section 473, subdivision (d) to vacate the default judgment in the Heller action, contending they were not properly served with the operative cross-complaint.[3] ACIC in response submitted (once again) the proofs of service and the declaration of the process server, who swore under penalty of perjury that he went to the Villas' residence in Encinitas, California and personally served William Villa with the summons and the first-amended cross-complaint after William identified himself. The process server also served Acclaim and Patricia by leaving a copy of the summons and cross-complaint for each with William.

In February 2012, Judge Jacqueline Stern denied the motion of the Villas and Acclaim to set aside the default judgment, ruling in part as follows:

"Nothing in Cross-Defendants' [e.g., the Villas and Acclaim] moving declarations or points and authorities demonstrates there was defective, improper, or no service of the First Amended Cross-Complaint and summons. The Court's file reveals that on Feb. 22, 2010, proofs of service were filed showing personal service of these documents on William Villa and sub-service, with follow-up mailing on Patricia Villa. Filing a proof of

---

[2]    Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

[3]    We say "according" because the motion to vacate filed by the Villas and Acclaim is *not* part of the record in this appeal.

6

service that complies with statutory standards creates a rebuttable presumption that service was proper.  [Citation.]  The moving papers [of the Villas and Acclaim] do not address the proofs of service and therefore the service is presumed proper.  In addition, Cross-complainants [including ACIC] have submitted with their opposition brief the declaration of the process-server . . . confirming personal service on William Villa and sub-service on Patricia.

"The Court also points out that a motion brought pursuant to [section] 473[, subdivision] (d) that contests the merits of the action may be deemed a general appearance waiving all service defects.  [Citation.]

"On Feb. 3, 2012, Cross-Defendants submitted proposed answers to the first amended cross-complaint.  In addition, the moving papers and declarations argue at length regarding the merits of the allegations in that cross-complaint.  Thus, the Cross-Defendants have engaged in conduct sufficient to constitute a general appearance, waiving all service defects."

D.  *The Instant Action*

Less than three weeks after the court denied the motion of the Villas and Acclaim to set aside the default judgment, the Villas (but not Acclaim)[4] filed the instant action against ACIC and L&H for intentional fraud, negligent misrepresentation, rescission of the bond, declaratory relief, breach of the implied covenant of good faith and fair dealing

---

4    Frankly, given the relationship between William and Acclaim and, more importantly, the fact the default judgment was against William, Patricia *and* Acclaim, it is surprising to say the least that Acclaim was not a party in the instant action.

7

and injunctive relief.  In their verified complaint, the Villas alleged under the rubric "Factual Allegations" they were "never served" with the operative cross-complaint in the Heller action, that "proper proof[s] of service [were] never presented to the Court" in connection with the cross-complaint and thus they "had no actual notice of the [first amended] Cross-Complaint."  These and other similar allegations—including that "[a]ll declarations in support of th[e] default judgment [were] false and fraudulent"—are incorporated by reference into each of the Villas' causes of action.

E. *The Anti-SLAPP Motion and the Trial Court's Ruling Granting that Motion*

Defendants ACIC and L&H in response filed a special motion to strike under California's anti-SLAPP statute, section 425.16, and a demurrer (that the trial court deemed moot in light of its order granting defendants' anti-SLAPP motion).  Defendants in their motion contended that the instant action arose out of protected activity as it is "based entirely on ACIC's litigation activities in connection with the *Hellar* [*sic*] action, consisting of filing and serving a cross-complaint against Villa, filing the proof of service and later obtaining a default judgment."

Judge Stern granted defendants' special motion to strike.  In so doing, the court found that all of the Villas' causes of action arose from acts of defendants "in furtherance of their right of petition, as the acts which form the gravamen of each of Plaintiffs' causes of action consist of 'written or oral statement or writing made before a . . . judicial proceeding . . . .'"

8

With respect to the third, fourth and fifth causes of action for rescission of the bond, declaratory relief and breach of the implied covenant of good faith and fair dealing, respectively, the court ruled as follows:

"The Court also concludes that CCP [section] 425.16 applies despite the fact Plaintiffs['] third, fourth, and fifth causes of action also allege non-protected activities because the 'principal thrust' of all of Plaintiffs' causes of action is protected activity and those protected activities are not 'merely incidental' to Plaintiffs' claims. (*Peregrine Funding, Inc. v. Sheppard, Mullin, Richter & Hampton LLC* (2005) 133 Cal.App.4th 658, 672[.)] This is made clear by the allegations in the first, second, and sixth causes of action and paragraph 48 in the third cause of action, paragraphs 51-53 in the fourth cause of action, and paragraphs 56 and 58 in the fifth cause of action. There is also an entire section of Plaintiffs' complaint starting on page 3 [i.e., the Factual Allegations discussed *ante*] outlining conduct by Defendants in prosecuting the underlying cross-complaint and how those activities resulted in what Plaintiffs contend is a void default judgment against them. All of those allegations are incorporated by reference into each and every one of Plaintiffs' causes of action. Thus, it is clear that the gravamen or principal thrust of this entire action and each cause of action is protected litigation and petitioning conduct.

"Since Defendants have met their initial burden of making a prima facie showing that Plaintiffs' complaint arises from Defendants' exercise of their right to petition, the burden shifts to Plaintiff[s] to establish a probability of prevailing on their claims. (See CCP [§] 4[2]5.16[, subd.] (b)[.]) Plaintiffs have not met that burden. Plaintiffs contend

9

that this action is not barred by the litigation privilege because, pursuant to the holding in *Flatley v. Mauro* (2006) 39 Cal.4th 299, the privilege cannot be used to allow illegal activity to create liability under the SLAPP statute. (See opposition brief page 7[,] lines 15-16[.]) That was not the holding in *Flatley*. That court held that where 'either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action.' (*Id*[.] at [p.] 320[.]) The Court also pointed out that this exception does not apply to the litigation privilege and it recognized that the privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' (*Id*[.] at [p.] 322[.])

"The *Flatley* court recognized that it was dealing with what it called one of those 'rare cases' where the defendant's 'protected activity is conclusively demonstrated to be illegal as a matter of law.' (39 Cal.4th 299 at [p.] 320[.]) Plaintiffs have not conclusively demonstrated in their opposition that Defendants engaged in illegal conduct as a matter of law. Thus the illegal conduct exception to the anti-SLAPP statute does not apply here.

"Plaintiffs' opposition brief does not address Defendants' argument that Plaintiffs cannot meet their burden of showing a probability of success on the merits because this case is an improper collateral attack since Plaintiffs have not shown that the underlying judgment is invalid on its face. [Citation.]

"Instead, Plaintiffs contend that res judicata does not apply because issues regarding the validity of the bond were not litigated in the prior action. However, the

10

doctrine of res judicata does not just bar causes of action actually litigated in the first action. It also bars causes of action that could have been litigated. [Citation.]

"Even if this action was not barred [by] the litigation privilege, was not an improper collateral attack, and was not barred by res judicata, Plaintiffs have presented no evidence showing that the service of the underlying First Amended Cross-Complaint was defective or that this Court's Feb. 10, 2012 ruling denying their Motion to Set Aside Defaults was incorrect. Instead, Plaintiffs make baseless arguments that the underlying judgment is invalid because there was no default prove-up hearing; Defendants did not file a proof of service of the summons and first amended [cross-]complaint; and the proof of service of the first amended cross-complaint was improperly filed only 12 days after the first amended cross-complaint itself was filed. None of these arguments demonstrate that the underlying service and/or judgment were invalid.

"Lastly, Plaintiffs' fraud-based causes of action have not been adequately pled. To defeat a SLAPP motion, Plaintiffs also must demonstrate their complaint is legally sufficient. [Citation.] Plaintiffs have not pled facts showing the elements of fraud as to the underlying litigation activities by Defendants and have not pled the elements with requisite specificity."

## DISCUSSION

A. *Authority to Hear the Anti-SLAPP Motion More Than 30 Days After Service*

The Villas main argument on appeal—which they did not raise in their briefing in the trial court—is that the court did not have jurisdiction even to consider the anti-SLAPP

11

motion because it was heard more than 30 days after it was served.  This argument, not unlike many others of the Villas in this proceeding, borders on the frivolous.

Prior to October 2005, courts held that a moving party's failure to schedule a timely hearing justified the denial of the anti-SLAPP.  (See, e.g., *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1387-1390; *Fair Political Practices Com. v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171, 1174-1178.)

However, effective October 2005, our Legislature amended section 425.16, subdivision (f) as an urgency statute effectively immediately on that date.  (Stats. 2005, ch. 535, §§ 1, 4.)  "Section 425.16, former subdivision (f) required not only that a special motion to strike be filed within 60 days after service of the complaint, but also that the notice of hearing specify a hearing date not more than 30 days after service of the motion unless the court's docket conditions required a later hearing date.  [Citation.]  The Legislature amended subdivision (f) in 2005, placing the burden on the court clerk, rather than the moving defendant, to schedule a hearing to occur within 30 days after service of the motion, expressly overruling the holdings in *Decker* [*v. U.D. Registry, Inc.*], *supra*, [105 Cal.App.4th] at pages 1387-1390, and *Fair Political Practices Com. v. American Civil Rights Coalition, Inc.*[, *supra*,] 121 Cal.App.4th 1171, 1174-1178, that the moving defendant's failure to schedule a timely hearing justified the denial of the motion."  (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 685, fn. 7; see also Assem. Bill No. 1158 (2005-2006 Reg. Sess.) Oct. 5, 2005.)

12

The court in *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337 (*Hall*) rejected the identical argument made by the Villas in this proceeding. After reviewing the 2005 modification to subdivision (f) of section 425.16, the *Hall* court ruled that "[s]ection 425.16, subdivision (f), as amended, requires the court clerk to schedule a special motion to strike for a hearing no more than 30 days after the motion is served if such a hearing date is available on the court's docket, but does not require the moving party to ensure that the hearing is so scheduled and does not justify the denial of a special motion to strike solely because the motion was not scheduled for a hearing within 30 days after the motion was served." (*Hall*, at p. 1349.)

We agree with *Hall* and likewise conclude here that under subdivision (f) of section 425.16, the trial court did not err or abuse its discretion by managing its own docket and hearing defendants' anti-SLAPP motion more than 30 days after it was filed. (See *Walker v. Superior Court* (1991) 53 Cal.3d 257, 267 [noting that it cannot "be questioned that courts have inherent authority to control their own calendars and dockets"]; see also *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [noting that "courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them"].)[5]

_____

5   The Villas contend that a 2012 case they cite as "*M.F. Farming, Co. v. Couch Distributing Company* H036546 (6th Dist June 2012)" stands for the proposition that "a claim of error could be brought on appeal for failure to hold the hearing within 30 days from time of service of the Anti-SLAPP motion." We note the language cited by the Villas from *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 186, fn. 2, involved the court's recognition that the plaintiff there had filed an amended complaint in response to the defendants' anti-SLAPP motion, which the court suggested violated the general rule that "an anti-SLAPP motion is addressed to the

13

Indeed, as a matter of public policy, if any party was "harmed" in this case and had room to complain about the alleged delay in having the anti-SLAPP motion heard, it would have been defendants inasmuch as the purpose of the anti-SLAPP statute is to provide a procedural remedy to dispose *promptly* of lawsuits that are brought to chill the exercise of constitutional rights or the right to petition.  (See § 425.16, subd. (a).)

B.  *The Anti-SLAPP Motion*

1.  *Governing Law and Standard of Review*

Section 425.16, the anti-SLAPP statute, is designed to deter and to dispose of quickly frivolous litigation arising from a defendant's exercise of the right of petition or free speech under the United States or California Constitution.  (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 311-312.)  In ruling on a special motion to strike, the trial court follows a two-step analysis that involves shifting burdens.  (*Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 50.)  The moving defendant carries the initial burden to show the challenged cause of action arises from protected free speech or petitioning activity.  (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387.)  The burden is satisfied by demonstrating that the conduct underlying the plaintiff's claim fits into a category of protected activity set forth in section 425.16, subdivision (e).[6]

---

current complaint and a plaintiff may not avoid the consequences of the motion by filing an amended complaint" (*ibid.*).  We thus conclude *M.F. Farming Co. v. Couch Distributing Co., Inc.* is inapposite here.

[6]     The categories are: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue

If the court finds the defendant's threshold showing has been made, the burden then shifts to the plaintiff to produce evidence establishing a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) To meet this burden, the plaintiff must plead and substantiate a legally cognizable claim for relief. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Ibid.*)

An order denying a special motion to strike under section 425.16 is immediately appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) Our review is de novo; we engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens. (See *Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 325.)

2. *Prong One*

The sole inquiry under the first prong of the anti-SLAPP statute is whether the Villas' claims arose from protected speech or petitioning activity. (See *Coretronic Corp. v. Cozen O'Connor*, *supra*, 192 Cal.App.4th at p. 1389.) Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for their claims. (See *City of Cotati v.*

under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

*Cashman* (2002) 29 Cal.4th 69, 78; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)  We review the parties' pleadings, declarations and other supporting documents at this stage of the analysis only "to determine what conduct is actually being challenged, not to determine whether the conduct is actionable." (*Coretronic Corp. v. Cozen O'Connor*, *supra*, at p. 1389.)

Section 425.16 is broadly construed to encompass a variety of prelitigation and litigation-related activities.  (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822–824.)  However, "[i]f the allegations of protected activity are merely incidental to a cause of action based essentially on non-protected activity, the allegations will not transform the non-protected cause of action into an action subject to the anti-SLAPP law."  (*Id.* at p. 823; see also *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 267; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 653.)  The focus on the gravamen of the action does not implicate "some philosophical thrust or legal essence of the cause of action" (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190) but instead looks at the conduct and activities of a defendant on which liability is allegedly based.  (*Ibid.*)

Here, we independently conclude that ACIC and L&H satisfied their burden to show that each of the Villas' six causes of action arose out of protected litigation activity as set forth in subdivision (e)(1) and/or (2) of section 425.16 as each is based on the "Factual Allegations" in the Villas' verified complaint that they allegedly were "never served" with the first amended cross-complaint in the Heller action; that defendants

16

allegedly "never" filed proper proofs of service of the summons and the first amended cross-complaint; that the declarations in support of the default prove up allegedly were "false and fraudulent"; and that as such, the default judgment itself allegedly is void.

Perhaps recognizing (i.e., conceding) that their first, second, fourth and sixth causes of action for intentional fraud, negligent misrepresentation and declaratory and injunctive relief, respectively, each allege conduct (i.e., petitioning activity) by defendants that falls within the broad scope of the anti-SLAPP statute (see *People ex rel. Fire Ins. Exchange v. Anapol*, *supra*, 211 Cal.App.4th at p. 822), the Villas contend that their third cause of action for recession of the bond and their fifth cause of action for breach of the implied covenant of good faith and fair dealing are outside the reach of the anti-SLAPP statute. According to the Villas, their third and fifth causes of action allegedly are "pure contract causes of action completely unrelated to the protected activity of the [Heller action]" because "nowhere in either cause of action is there any reference to the [Heller action]." We find this contention unavailing.

First, we note the Villas incorporated the "Factual Allegations" into each of their causes of action, including their third and fifth causes of action. Second, and perhaps more importantly, the Villas have put the proverbial "cart before the horse" in contending their third and fifth causes of action are "pure contract" claims inasmuch as the Villas have a judgment against them based on the *validity* of the bond. Therefore, before they can litigate their breach of contract claims they first must void the judgment, which explains why the "Factual Allegations" not only are incorporated into both the third and

17

fifth causes of action but also why such allegations are the "principal thrust or gravamen" of those claims. (See *Hylton v. Frank E. Rogozienski, Inc.*, *supra*, 177 Cal.App.4th at p. 1272; *City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 78.)

Because we conclude that each of the Villas' causes of action in their verified complaint arose out of activity protected by section 425.16, the burden shifted to the Villas to demonstrate a probability of prevailing on one or more of their claims.

3. *Prong Two*

To establish a probability of prevailing on one or more of their causes of action, the Villas were required to make a prima facie showing of facts that would, if proved at trial, support a judgment in their favor. (§ 425.16, subd. (b).) "It is well settled that in opposing a SLAPP motion the plaintiff's showing of a probability of prevailing on its claim must be based on admissible evidence." (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147; see also *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236 [noting that the showing must be made through "competent and admissible evidence"].) Significant to the issue before us, a party cannot merely rely on allegations in the party's complaint, even if verified, to meet this evidentiary test under prong two but instead must adduce competent, admissible evidence. (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613-614; see also *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017 [same].) Here, the record shows that the Villas did not proffer any evidence to establish a probability of success on the merits.

18

In any event, we conclude the Villas cannot satisfy their burden under prong two. Although proof of a "legal defense to liability . . . is *immaterial* to the first prong of the anti-SLAPP analysis—i.e., determining whether plaintiff's claim is based on defendant's protected activities," once section 425.16 is found to apply, such as in the instant case, "proof of a valid defense is relevant to the second prong of the analysis—i.e., determining *whether there is a probability of plaintiff prevailing* in the action." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 7:938 at p. 7(II)–44, citing *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 445.)

Here, the record shows that in denying the Villas' motion to vacate the default judgment, Judge Stern found that the Villas were properly served with the first amended cross-complaint.[7] This finding, which we conclude is supported by substantial evidence in the record, is a full and complete defense to the Villas' contention that the default judgment is void. As such, we conclude as a matter of law that the Villas cannot show a probability of success on the merits of any of their causes of action.

But that is not all. Judge Stern also determined that the Villas waived any and all alleged defects in service when they submitted proposed answers to the first amended cross-complaint and when they brought their motion pursuant to section 473 to set aside the default judgment. We note the Villas have not challenged this determination and thus

_____

[7]    As noted *ante*, Judge Battaglia also found in the RICO action that ACIC and L&H had properly served the operative cross-complaint on the Villas.

19

conclude for this separate and independent reason that they cannot satisfy their burden to show a probability of success on the merits of any of their causes of action.

In addition, we note the Villas do not challenge the finding of Judge Stern made in connection with the instant action that defendants' conduct and activities in the Heller action was protected by the litigation privilege set forth in Civil Code section 47, subdivision (b).[8]

"'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

---

[8] Civil Code section 47 provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ."

We independently conclude that the trial court correctly found that the litigation privilege in Civil Code section 47, subdivision (b) applied to the litigation activities of ACIC and L&H in the Heller action and, for this additional reason, we conclude the Villas cannot show a probability of success on the merits of any of their causes of action in the instant action. (See Code Civ. Proc., § 425.16, subd. (b)(1); see also *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 [noting that the "[p]leadings and process in a case are generally viewed as privileged communications"]; *Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1062 [noting that the filing of allegedly "perjured declarations of service" were communications subject to protection under the litigation privilege].)[9]

---

[9] Given that multiple independent reasons conclusively show that the Villas cannot satisfy their burden to show a probability of success on the merits of any of their causes of action, we need not address whether the instant action also is barred by the doctrine of res judicata, as also found by the trial court. (See *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 [noting that this doctrine ""'precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief"'" and noting that the doctrine "benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.'"].)

21

DISPOSITION

The order granting the anti-SLAPP motion of defendants ACIC and L&H is affirmed.  Defendants are awarded their costs of appeal.


                                                            _____
                                                                                    BENKE, J.


WE CONCUR:


_____
            McCONNELL, P. J.


_____
            O'ROURKE, J.