24CA0230 Murphy Creek v Matise 11-14-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0230
Arapahoe County District Court No. 23CV31209
Honorable Elizabeth Beebe Volz, Judge

Murphy Creek Development, Inc., a Colorado corporation and Murphy Creek, LLC, a Wyoming limited liability company,

Plaintiffs-Appellants,

v.

Brian K. Matise,

Defendant-Appellee.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE NAVARRO
Gomez and Richman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

Seter, Vander Wall & Mielke, P.C., Kim J. Seter, Elizabeth A. Dauer, Russell Newton, Greenwood Village, Colorado, for Plaintiffs-Appellants

Winget, Spadafora & Schwartzberg, LLP, Derek C. Anderson, Jennifer R. O'Shea, Boulder, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Plaintiffs, Murphy Creek Development, Inc. and Murphy Creek, LLC (collectively, Murphy Creek), appeal the district court's dismissal of the claims against defendant, Brian K. Matise, under section 13-20-1101, C.R.S. 2024, commonly known as the anti-SLAPP statute.  ("SLAPP" stands for strategic lawsuit against public participation.)  We affirm the order and remand with directions.

## I.    Factual and Procedural History

¶ 2    Murphy Creek Metropolitan District No. 3 (the District) is organized under the Special District Act.  *See* § 32-1-101 to -113, C.R.S. 2024.  Under the control of its board of directors, the District has the authority to provide services for properties within its boundaries, such as security, landscaping, and snow removal.  *Murphy Creek Dev., Inc. v. Murphy Creek Metro. Dist. No. 3*, slip op. at ¶ 4 (Colo. App. No. 20CA2106, Apr. 28, 2022) (not published pursuant to C.A.R. 35(e)).  To pay for these services, the District may impose fees on owners and developers of the properties.  *Id.*

¶ 3    Murphy Creek owns property within the District's boundaries as well as bordering property.  Much of the land owned by Murphy Creek was vacant at the times relevant to this case.

¶ 4　　In 2018, the District, through its board, hired Matise as general counsel.  The District asked Matise if it could impose fees that would be allocated differently between occupied property and vacant property.  Matise informed the board that the fees could be allocated differently between occupied and vacant lots if the allocation was based on a rational relationship between either the cost of the services provided to the property or the degree that each property benefited from the services.  The District proposed and adopted a fee structure allocating fees based on the use of the property (the 2018 Resolution).

¶ 5　　In 2019, Murphy Creek filed suit to challenge the fees imposed on its property, and Matise acted as counsel for the District in that litigation.  A district court found the fees to be unreasonable based on the costs of servicing the property; thus, the court invalidated those fees.  The court dismissed Murphy Creek's other claims as well as the District's counterclaims.  Both parties appealed, and a division of this court affirmed the judgment.  *Id.* at ¶¶ 1-2.

¶ 6　　In 2021, the District adopted another fee resolution, which set forth new fees and provided that, until paid, the fees would constitute a statutory lien on the property served (2021 Resolution).

2

Murphy Creek paid the fees under protest and again sued the District along with some individuals, including Matise. In addition to challenging the 2021 Resolution, Murphy Creek alleged that some of the District's board members and Matise engaged in fraud, a civil conspiracy, and a deprivation of Murphy Creek's constitutional rights in violation of 42 U.S.C. § 1983. Specifically, Murphy Creek alleged that the various fees imposed were improper and that the board and Matise had engaged in misconduct when implementing the fees and defending them in court.

¶ 7 Matise filed a special motion to dismiss the claims against him and a supporting affidavit under section 13-20-1101(3)(a). Murphy Creek responded to the motion but did not submit any opposing affidavits. Instead, Murphy Creek relied on its allegations in the complaint and submitted five exhibits.

¶ 8 The district court held a hearing on the special motion and concluded that Matise had met his initial burden to prove that the anti-SLAPP statute applied to his conduct at the heart of Murphy Creek's claims. The court permitted Murphy Creek to file a supplemental brief on whether the litigation privilege applied to Matise's statements and conduct and whether Murphy Creek had

established a reasonable likelihood that it could prevail on its claims at trial. The court then granted Matise's special motion to dismiss the claims against him, in part because the court found that the litigation privilege shielded some of Matise's conduct.

¶ 9 Murphy Creek moved for reconsideration and for permission to file an amended complaint. The district court denied both motions.

¶ 10 On appeal, Murphy Creek contends that the district court erred by concluding that (1) the anti-SLAPP statute applied to Matise's conduct, and (2) Murphy Creek did not establish a reasonable likelihood of success on its claims against him.

## II. Anti-SLAPP statute

### A. General Principles

¶ 11 The General Assembly enacted section 13-20-1101 "to address lawsuits aimed at stifling or punishing the exercise of the First Amendment rights to free speech and to petition the government." *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 1. The statute's purpose is to "encourage and safeguard" the exercise of those constitutional rights "to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." § 13-20-1101(1)(b). The statute seeks to

4

balance competing interests by creating a mechanism for "weeding out, at an early stage, nonmeritorious lawsuits brought in response to a defendant's petitioning or speech activity." *Tender Care Veterinary Ctr., Inc. v. Lind-Barnett*, 2023 COA 114, ¶ 12 (*cert. granted* Sept. 3, 2024). If the plaintiff's claim arises from the defendant's conduct falling within the statute's purview, a district court may grant a "special motion to dismiss" the plaintiff's claim. § 13-20-1101(3)(a).

¶ 12 A special motion to dismiss initiates a two-step process. First, the defendant bears the burden to show that their conduct underlying the plaintiff's claim falls within the statute. *L.S.S.*, ¶ 21. Second, if the defendant shows that their conduct falls within the statute's scope, the burden shifts to the plaintiff to establish a reasonable likelihood that they will prevail on the claim. *Id.* at ¶ 22; § 13-20-1101(3)(a).

¶ 13 We review de novo an order granting or denying a special motion to dismiss, applying the same two-step analysis as the district court. *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 21.

## B. Summary of Relevant Factual Allegations

¶ 14 Murphy Creek alleged that Matise committed fraud and participated in a "private conspiracy" with others to "gain control of the District and weaponize its statutory powers against" Murphy Creek. Murphy Creek asserted that Matise used governmental authority to impose an "invalid fee and statutory lien" to achieve "unlawful goals and goals by unlawful means."

¶ 15 Murphy Creek's allegations of fraud focus on the 2018 and 2021 Resolutions adopted by the District's board. Murphy Creek alleged the District and Matise knew that the fees associated with the 2018 Resolution were "not intended to fund services" and instead were "intended as a penalty to get [Murphy Creek's] attention, discourage and penalize agricultural use, and incentivize development." Murphy Creek also claimed that Matise, as the District's counsel, made misrepresentations to the District (when providing legal advice about matters under the District's consideration) and to others, including about the 2018 Resolution.

¶ 16 Regarding the 2021 Resolution, Murphy Creek asserted that the District did not intend to use payments derived from vacant property for the purposes stated by the District; the District

misused revenue from the vacant property for general administration; and Murphy Creek paid the fees "relying on Defendant Matise's representations and language of the 2021 Fee Resolution, and [Murphy Creek] [was] damaged by these false statements."

¶ 17 Additionally, Murphy Creek claimed that Matise, while representing the District in the earlier litigation, submitted problematic or misleading affidavits, discovery responses, and motions to the court. Further, Murphy Creek alleged that Matise filed briefs "fraudulently claiming [the fees] funded additional landscape and security costs," made misrepresentations during closing arguments, and then abused the appellate process.

¶ 18 Relatedly, Murphy Creek alleged that Matise's challenged conduct was part of a conspiracy with others to abuse the District's power to impose fees as a means to achieve their own personal objectives and to harass Murphy Creek by discouraging its agricultural use of the land.[1]

---

[1] To the extent Murphy Creek relies on its amended complaint, we reject that reliance because the district court denied its motion to amend the complaint. And that ruling is not properly before us

## C.      Step One: Protected Activity

¶ 19      First, we consider whether Matise's conduct at the heart of Murphy Creek's claims falls within the anti-SLAPP statute's ambit. We conclude that it does.

¶ 20      Colorado's anti-SLAPP statute applies to a cause of action against a person arising from any "[a]ct in furtherance of a person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue." § 13-20-1101(2)(a), (3)(a). Such an act includes, as relevant here, "[a]ny written or oral statement or writing made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law" as well as "[a]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other official proceeding authorized by law." § 13-20-1101(2)(a)(I)-(II).

---

because it is beyond the scope of the anti-SLAPP statute's appeal provisions. *See Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 56 ("We begin by clarifying that this appeal is limited to the district court order denying defendants' special motions to dismiss."); § 13-20-1101(7), C.R.S. 2024.

¶ 21    To determine whether the plaintiff's claim is based on the defendant's protected activity, "we look to the 'principal thrust or gravamen of the plaintiff's cause of action.'" *Cent. Valley Hospitalists v. Dignity Health*, 227 Cal. Rptr. 3d 848, 857 (Ct. App. 2018) (citation omitted).[2]  As summarized above, Murphy Creek's allegations arise from Matise's alleged private agreement with others to encourage the District to impose unwarranted fees on Murphy Creek's property, his advice and statements to the District and others supporting the fees, and his defense of the fees in court against Murphy Creek's lawsuit.

¶ 22    First of all, Matise's alleged private agreement with others to impose improper fees and otherwise harass Murphy Creek, in and of itself, did not cause injury to Murphy Creek.  If Matise and the alleged co-conspirators had reached this agreement and done nothing else, Murphy Creek would not have suffered any of the alleged injuries.  So the alleged agreement was not the "core-injury producing conduct," to use Murphy Creek's preferred description.

---

[2] Because California has a substantially similar anti-SLAPP statute, "we look to California case law for guidance in construing and applying section 13-20-1101." *Tender Care Veterinary Ctr., Inc. v. Lind-Barnett*, 2023 COA 114, ¶ 16 (*cert. granted* Sept. 3, 2024).

Only Matise's alleged conduct in furtherance of the alleged agreement could possibly have harmed Murphy Creek.

¶ 23     Second, the District, not Matise, enacted the fee resolutions and imposed the fees. According to Murphy Creek's allegations, Matise's challenged conduct relates to his role in the District's decisions to impose, collect, and defend the various fees. That alleged conduct — the "core-injury producing conduct" — involved Matise's oral and written statements about the fees and other issues under the District's consideration.

¶ 24     And Matise's statements about the fees and other issues under the District's consideration clearly fall within the scope of the anti-SLAPP statute, whether he made the statements as a citizen or as counsel to the District and whether he made them before the litigation or as part of a judicial proceeding. *See* § 13-20-1101(2)(a)(I)-(II). This is true because the District is a legislative or executive body.[3]

---

[3] To the extent Murphy Creek challenged other fees that we have not specifically identified in our summary of its allegations, we note that the same analysis applies to those fees. We further conclude that Murphy Creek's reliance on *Tender Care Veterinary Center*, ¶ 18, is misplaced because the defendant's statements there "were

¶ 25     We are not persuaded otherwise by Murphy Creek's contentions that Matise's alleged conduct was "illegal as a matter of law" and thus outside the protections of the anti-SLAPP statute. True, where the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant cannot use the anti-SLAPP statute to strike the plaintiff's action.  *L.S.S.*, ¶ 30.  But Matise *disputed* the alleged illegality of his actions, and Murphy Creek presented little evidence showing illegality or fraud (as we will discuss more fully below), so this exception does not apply.  Indeed, to adopt Murphy Creek's position that Matise cannot rely on the anti-SLAPP statute because he engaged in fraud and civil conspiracy would require us to accept as true propositions that have not been proved.  *See id.* at ¶ 31 ("Certainly, if a defendant were precluded from satisfying step one anytime a plaintiff alleged that the defendant's otherwise-protected statements were false, it would undercut the purposes of the anti-SLAPP statute and would allow a plaintiff to evade the statute merely by alleging falsity.").

---

not made in connection with any executive, legislative, or judicial body or function, *see* § 13-20-1101(2)(a)(I)-(II)."

11

¶ 26    Likewise, Murphy Creek misses the mark when arguing that Matise's alleged statements are unprotected because they demonstrate "per se malpractice on his client."  Murphy Creek relies on a California case recognizing that an anti-SLAPP statute does not apply to "a *client's* claim against his or her former attorney for breach of fiduciary duty . . . or for malpractice . . . merely because the client's claim against the former attorney followed or was associated with petitioning activity by the attorney on the client's behalf."  *Hylton v. Frank E. Rogozienski, Inc.*, 99 Cal. Rptr. 3d 805, 811 (Ct. App. 2009) (emphasis added).  The *Hylton* case is readily distinguishable because Matise, in his role as the District's counsel, did not owe fiduciary duties to Murphy Creek.  *Cf. id.* at 811-12 ("Hylton's claims allude to Rogozienski's petitioning activity, but the gravamen of the claim rests on the alleged violation of Rogozienski's fiduciary obligations to Hylton by giving Hylton false advice to induce him to pay an excessive fee to Rogozienski.").  In fact, the *Hylton* decision recognized that a *third-party's* claim against an attorney based on the attorney's legal advice and actions *can* fall within an anti-SLAPP statute.  *See id.* at 812 (noting that "a

12

malicious prosecution action by a third person against the attorney may fall within the anti-SLAPP statute").

¶ 27 Finally, Murphy Creek's argument that its allegations show that Matise engaged in "per se commission of fraud on the Colorado Courts" is unavailing because Murphy Creek cites no authority in support of such a notion and otherwise concedes that "[t]he fraud on the Colorado Courts and other circumstantial evidence admittedly concerns activity covered by Anti-SLAPP."

¶ 28 For these reasons, we cannot conclude as a matter of law that Matise's conduct was not protected by the anti-SLAPP statute, and we agree with the district court that he satisfied the first step.

### D. Step Two: Likelihood of Prevailing

¶ 29 To reiterate, after a defendant shows that the statute applies to the plaintiff's claim, the burden shifts to the plaintiff to establish a "reasonable likelihood that the plaintiff will prevail on the claim." § 13-20-1101(3)(a). This step has been described as a "summary judgment-like procedure in which the court reviews the pleadings and the evidence to determine 'whether the plaintiff has stated a legally sufficient claim *and* made a prima facie factual showing sufficient to sustain a favorable judgment.'" *L.S.S.*, ¶ 23 (emphasis

added) (citation omitted).  In making this determination, the court may not resolve any factual conflicts.  *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 63; *Rosenblum v. Budd*, 2023 COA 72, ¶ 24.

¶ 30    Importantly, unlike in the case of a C.R.C.P. 12(b)(5) motion, the court does not accept the plaintiff's factual allegations in the complaint as true.  *Coomer*, ¶ 68.  Instead, to defeat an anti-SLAPP motion, the plaintiff must go further and present *evidence* establishing a reasonable likelihood of success.  *Id.*  Under the statute's plain language, the plaintiff's evidence typically comes in the form of an affidavit.  *See id.*; § 13-20-1101(3)(b).  "[O]nce affirmed in an affidavit, the plaintiff's assertions are no longer mere allegations; they are evidence.  And that evidence must be accepted as true."  *Coomer*, ¶ 68.  The court may consider the defendant's evidence only to determine if it defeats the plaintiff's claim as a matter of law.  *Id.* at ¶ 72.

¶ 31    Then, the court "must assess whether the facts in the affidavits submitted by the plaintiff, 'if true, establish a reasonable likelihood of proving each claim under the applicable burden of proof.'"  *Id.* at ¶ 63 (citation omitted).  If the plaintiff meets this

burden, then the court must deny the special motion to dismiss; otherwise, the claim must be dismissed. *Id.*

¶ 32 In support of his special motion to dismiss, Matise provided an affidavit and a supplemental affidavit. As Matise emphasizes on appeal, however, Murphy Creek did not submit an affidavit to meet its step-two burden to produce evidence.

¶ 33 According to Murphy Creek, it was not required to submit an affidavit to demonstrate a reasonable likelihood of success on its claims because Matise's affidavit did not "refute" Murphy Creek's allegations or defeat its "prima facie showing of fraud as a matter of law." And in its opening brief, Murphy Creek relies exclusively on its allegations without mentioning any supporting evidence. But Murphy Creek misunderstands the applicable framework. As explained, at step two, Murphy Creek could not rest solely on its allegations; instead, it bore the burden to produce evidence — "a prima facie *factual* showing sufficient to sustain a favorable judgment." *L.S.S.*, ¶ 23 (emphasis added) (citation omitted); *see Coomer*, ¶ 76. So we turn to whether Murphy Creek met its evidentiary burden despite its failure to submit any affidavits. *See*

*Coomer*, ¶ 79 ("No party argues that the court may only consider affidavits, and we decline to impose such a limitation in this case.").

¶ 34    As Murphy Creek mentions for the first time in its reply brief, it filed five exhibits with its response to Matise's special motion to dismiss. Exhibit A is an unsworn 2023 declaration from Jake Willett, a former owner of a landscaping company that provided services to the District. In the unsworn declaration, Willett said he "intend[ed] to provide clarification" about an affidavit that he signed in 2019 and provided to the District. Because Murphy Creek did not submit that affidavit in response to the special motion to dismiss, however, it is not entirely clear what Willett attempted to clarify with his new declaration. Willett declared that "[w]hile the District's attorneys drafted the affidavit, *I reviewed the contents and approved the same, under oath, through affixing my signature.*" (Emphasis added.) Willett also declared that (1) the earlier affidavit was based on information provided by the District and Matise, "combined with [Willett's] own personal observations"; (2) Willett's "statement in the affidavit regarding vacant agricultural tracts [i.e., Murphy Creek's property] being the cause of [prairie dog and weed] problems was not [his] personal opinion," and he "only signed off on

16

it because it was represented to [him] that the tracts were the cause"; and (3) Willett "never wanted to be dragged into the District's fight against [Murphy Creek]."[4]

¶ 35    Willett's declaration, accepted as true, reveals that he previously provided statements under oath to the District and Matise that *supported* the District's fees on Murphy Creek's property.  We do not see how this declaration could show that Matise engaged in fraud by recommending and defending those fees.  While the District's attorneys might have drafted the affidavit, Willett attested to its truth under penalty of perjury after he "reviewed the contents and approved the same."

¶ 36    Exhibit B is an order reflecting the district court's findings of fact and conclusions of law in the earlier litigation.  Murphy Creek argues that this order shows that Matise *knew* the District's security budget was only $60,000 annually and that Murphy Creek's fair share was about $9,000 to $12,000 annually.  Yet, according to Murphy Creek, Matise recommended services fees

---

[4] Murphy Creek sued Willett in this case.  Murphy Creek voluntarily dismissed Willett as a defendant shortly before he signed the unsworn declaration that is Exhibit A.

17

charging over $144,000 for security costs. Exhibit B, however, does not address Matise's knowledge about this topic. It merely describes trial testimony from the District's security personnel and the court's related findings.

¶ 37    Exhibit C is a collection of four pages excerpted from what appears to be the District's response to a summary judgment motion in an unnamed case. On appeal, Murphy Creek asserts that those pages are from "Matise's legal briefs from February 2020" and they reveal his knowledge that Murphy Creek's property is zoned as "planned development," contrary to his claim that he learned about this zoning classification at "the August 2020 trial." But the pages are undated and unsigned. (Murphy Creek provided neither a cover page nor a signature page for the document.) Thus, on their face, those stray pages do not reveal who wrote the statements or when they were written. And recall that we do not accept Murphy Creek's allegations as true at this stage. Hence, those pages do not support Murphy Creek's likelihood of success on its claims.

¶ 38    Exhibit D is an email from Matise to Murphy Creek's counsel following the trial over the 2018 Resolution. Murphy Creek argues that this message shows that Matise misrepresented the District's

18

intent "for a proposed fee that would eventually be part of the 2021 Resolution." But the email does not reveal such a misrepresentation; it simply describes the District's planned fees and the justification for the fees. While Murphy Creek characterizes the email as "a form of extortion (couched as a settlement offer)" because Matise suggested that the District might drop its appeal of the earlier judgment if Murphy Creek agreed to pay the new fees, Murphy Creek did not bring an extortion claim. At any rate, this run-of-the-mill settlement offer would hardly support such a claim.

¶ 39    Exhibit E is the District's appellate brief to this court, in which Matise represented the District, submitted in the earlier appeal of the district court's judgment. In the appeal at issue here, Murphy Creek says Matise admitted in that earlier brief that some fees were meant to relate to services provided to Murphy Creek and a different fee (the "agricultural fee") "had nothing to do with service costs and was instead intended to discourage a nuisance." Yet, in its response to Matise's special motion to dismiss, Murphy Creek submitted no evidence (as opposed to allegations) indicating that Matise himself had ever argued that the fees at issue had different purposes. In any event, according to the district court's

19

conclusions in the earlier litigation (Exhibit B), the agricultural fee did not apply to Murphy Creek's property.

¶ 40 For the foregoing reasons, we conclude that these five exhibits do little to establish a reasonable *likelihood* that Murphy Creek will prevail on its claims.

¶ 41 Finally, we acknowledge Murphy Creek's argument that Matise's affidavit itself supports Murphy Creek's claims. Assuming for the sake of analysis that we can consider Matise's affidavit for purposes apart from assessing whether it defeats Murphy Creek's claim as a matter of law, we are not persuaded. Murphy Creek's argument is conclusory, simply asserting that the "affidavit is actually evidence of the fraud, as it includes some of the same misrepresentations that [Matise] used to commit the fraud in the first instance." *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41, n.12 ("We don't consider undeveloped and unsupported arguments."), *aff'd*, 2021 CO 56. Murphy Creek's argument is also circular because it asks us to first accept that Matise's earlier statements were false in order to then conclude that his repetition of those statements in the affidavit shows fraud.

¶ 42 To summarize, Murphy Creek presented a paucity of evidence to support its claims, preferring instead to rely on its allegations in the complaint. As a result, it failed to meet its burden to produce evidence showing a reasonable likelihood that it will prevail on its fraud, conspiracy, and § 1983 claims against Matise. Although the district court's ruling did not rest on the inadequacy of Murphy Creek's evidentiary presentation, "we may affirm the [district] court's ruling based on any grounds that are supported by the record." *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004). Therefore, we conclude that the court properly granted Matise's special motion to dismiss the claims against him.[5]

## III. Attorney Fees and Costs

¶ 43 Matise requests an award of attorney fees and costs incurred on appeal under section 13-20-1101(4)(a) ("[A] prevailing defendant on a special motion to dismiss is entitled to recover the defendant's attorney fees and costs."). We grant his request and remand for the district court to determine and award the amount of reasonable

---

[5] In light of our conclusion, we need not resolve the parties' dispute about whether the litigation privilege applies to Matise's conduct.

21

attorney fees and costs that Matise incurred on appeal. *See* C.A.R. 39.1; *Rosenblum*, ¶¶ 60-64.

## IV. Conclusion

¶ 44    The order is affirmed, and the case is remanded with directions to determine and award the amount of reasonable attorney fees and costs that Matise incurred on appeal.

JUDGE GOMEZ and JUDGE RICHMAN concur.